UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CELINA CASSANDRA RAMOS,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:26-cv-00958-JLT-GSA

**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO GRANT DEFENDANT'S CROSS MOTION, TO AFFIRM THE DECISION OF THE COMMISSIONER AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

**(Docs. 14, 17)**

## I. Introduction

Plaintiff Celina Cassandra Ramos seeks judicial review of a final decision of Defendant Commissioner of Social Security denying her applications for disability insurance benefits (DIB) and supplemental security income (SSI) pursuant to Titles II and XVI of the Social Security Act. The matter is before the undersigned for issuance of Findings and Recommendations based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law do support the ALJ's decision and recommends that the Court direct entry of judgment in favor of Defendant and against Plaintiff.

## II. Factual and Procedural Background

Plaintiff filed the applications on February 8, 2023. In both applications, the claimant alleged disability beginning January 17, 2023. These claims were denied initially on October 30, 2023, and upon reconsideration on January 14, 2025. On September 9, 2025, the ALJ held a telephone hearing. On September 26, 2025, the ALJ issued an unfavorable decision. After the Appeals Council denied review on December 12, 2025, Plaintiff appealed to this Court on February 4, 2026.

### III. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.

"This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

"This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Id.

(quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

**IV. Evaluating a Claimant's Alleged Disability**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Finally, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even

if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099.

## V. The ALJ's Decision

The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since January 17, 2023, the alleged onset date. AR 18.

At step two, the ALJ found that "The claimant has the following severe impairments: bipolar disorder, borderline personality disorder, post-traumatic stress disorder (PTSD), general anxiety disorder, depressive disorder and substance disorder." AR 18.

At step three, the ALJ found that the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 20.

Prior to step four, the ALJ evaluated Plaintiff's RFC and concluded as follows:

> [t]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she cannot climb ladders, ropes or scaffolds and she cannot work at unprotected heights, around dangerous moving machinery or other hazards. She can understand remember and carry out simple and detailed but not complex instructions for up to two-hour periods of time in a nonpublic work environment with only occasional interaction with coworkers and supervisors. She cannot perform fast paced production or assembly line type work defined as work requiring more than frequent use of the hands. She can adapt or tolerate occasional changes in workplace setting or routine with advance notice. She cannot work around large groups of people like what would be expected at shopping malls, airports, hospitals, and/or at concert or sporting arenas. AR 22.

At step four, the ALJ found "The claimant has no past relevant work." AR 27.

At step five, relying on the VE's testimony, the ALJ found that "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." Specifically, the jobs were: housekeeping cleaner, marker, and routing clerk. AR 27-28.

Accordingly, the ALJ concluded Plaintiff was not disabled since the alleged onset of January 17, 2023. AR 28.

## VI. Issue Presented

Plaintiff asserts two claims of error.

First, Plaintiff contends "The ALJ failed to provide 'clear and convincing' reasons to reject Ms. Ramos's psychological symptomology evidence of record." MSJ at 2. Hereinafter, Claim I.

Second, Plaintiff contends "The MRFC is not supported by substantial evidence of record," which addresses the opinion of Consultative Examiner, Dr Gunnarsson. MSJ at 11. Hereinafter, Claim II.

### A. Claim I (Psychological Symptomology Testimony)

#### 1. Applicable Law

##### a. RFC Generally

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including non-severe ones. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); SSR 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes*

*v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton,* 799 F.2d 1403, 1408).

**b. Subjective Symptomology**

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. See Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281; SSR 16-3p. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. SSR 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p.

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**c. Evaluating Mental Impairments**

"In evaluating mental impairments, an ALJ must rate a claimant's degree of limitation in

four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." Spears v. Saul, 842 F. App'x 107, 108 (9th Cir. 2021) (citing 20 C.F.R. § 404.1520a(c)(3)). "These factors are generally analyzed in a Psychiatric Review Technique Form (PRTF) ... at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two." Restifo v. Astrue, No. ED CV 10-01469, 2011 U.S. Dist. LEXIS 64552, 2011 WL 2415775, at *1 (C.D. Cal. June 15, 2011) (citing SSR 85-16, 1985 SSR LEXIS 18, 1985 WL 56855). Thus, in determining a claimant's mental RFC, the ALJ must fully consider "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. §§ 404.1545(c), 416.945(c).

Also, when evaluating mental impairments the ALJ first evaluates "pertinent symptoms, signs, and laboratory findings to determine whether" the claimant has "a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If so, the ALJ then "rate[s] the degree of functional limitation resulting" from the impairment. Id. § 404.1520a(b)(2). The ALJ considers four broad functional areas: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." Id. § 404.1520a(c)(3).

Importantly, the Social Security Administration supplemented the five-step general disability evaluation process with regulations governing the evaluation of mental impairments at steps two and three of the five-step evaluation process. See generally 20 C.F.R. § 404.1520a. First, the ALJ must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Next, the Commissioner must assess the degree of functional limitations resulting from the claimant's mental impairment with respect to the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3)

concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). These four areas are known as the "Paragraph B" criteria. Id.

Finally, the Commissioner must determine the severity of the claimant's mental impairment and whether that severity meets or equals the severity of a mental impairment listed in Appendix 1. 20 C.F.R. § 404.1520a(d). Under Appendix 1, to satisfy to the Paragraph B criteria, a claimant's mental [*9] impairment renders them disabled if it "result[s] in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b). A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d). By contrast, an "extreme" limitation is the inability to function independently, appropriately, or effectively on a sustained basis. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(e).

If the Commissioner determines that the severity of the claimant's mental impairment meets or equals the severity of a listed mental impairment, the claimant is disabled. See 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the evaluation proceeds to step four of the general disability inquiry. See 20 C.F.R. § 404.1520a(d)(3).

### 2. <u>Analysis</u>

The ALJ found “that the claimant’s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant’s statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.” AR 24. Next, because the ALJ found no malingering the ALJ was required to identify clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff’s symptom testimony.

Here, the ALJ explained:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because the record shows management of her mood disorder with behavioral therapy such that she was able to be a caregiver for her friend's small children while also caring for her sister's father-in-law and niece as well as do the housecleaning. She repeatedly presented with normal mental status evaluations being noted as having moderate symptoms. (Exhibit 2F, 4F, 7F and 9F) In May 2023, she reported being able to care for her dog, prepare simple meals, do laundry, wash dishes, clean her room, drive, walk around the block, go to the store and appointments with a companion, pay attention well while at home, follow written instructions and spend time watching television and bird watching. (Exhibit 5E) In December 2024, she reported being independent with her daily activities while being able to prepare meals, drive, shop independently, shower and dress self independently, perform typical household chores and take her dog and her sister's dog out to the creek for a 15-20 minute walk spending her day watching television and napping. (Exhibit 8F/3) (AR 26).

Plaintiff disagrees with this explanation, stating:

> These are not a "clear and convincing" reasons to reject Ms. Ramos' allegation of a disabling level of psychological impairment due to PTSD stemming from her prior traumatic work incident. First, prior to this statement, the ALJ's only "discussion" or "analysis" of Ms. Ramos' hearing "testimony" was at step Three to determine PRTF factors, which cannot be incorporated into a symptomology analysis "post-hoc." (AR 20-22). As the ALJ's opinion itself indicates, the "limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process," and "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning." (AR 22). See Hyneman v. Colvin, No. C13-0669-JLR, 2013 WL 5913235, at *3 (W.D. Wash. Nov. 4, 2013) ("The Commissioner argues that the ALJ also cited inconsistent daily activities as a reason to discount Plaintiff's credibility ... The Commissioner does not identify where in the decision the ALJ so noted, and the Court's review of the decision does not comport... the portion of the decision cited as support does not actually contain a description of Plaintiff's activities nor an explanation of how those activities contradict his allegations ... [t]he ALJ did describe the 'mild restriction' in Plaintiff's daily activities in his step three findings, but did not suggest there that Plaintiff's self-reported daily activities undermined his credibility ... passing reference to daily activities that are 'contrary to a finding of total disability' ... without any indication of which activities he had in mind nor which allegations are undermined by those activities, is not sufficiently specific as to be considered clear and convincing."); Gardner v. Colvin, No. EDCV 13-1272 JC, 2014 WL 255621, at *4 (C.D. Cal. Jan. 23, 2014) (stating the court was "not persuaded that the foregoing finding by the ALJ satisfied the ALJ's obligation to specify the basis for rejecting plaintiff's credibility in this case [as] [t]he ALJ identified the foregoing mild limitation in plaintiff's mental abilities when considering the 'paragraph B Criteria' used to determine the severity of plaintiff's mental impairments at step two ... not when evaluating plaintiff's credibility in connection with the ALJ's residual

functional capacity assessment at step four.”). MSJ at 3–4.

Plaintiff continues:

> Next, the ALJ provides a “summary” of Ms. Ramos’ testimony in a completely separate portion of the decision (AR 23), absent any analysis or link to the ALJ’s rejection of Ms. Ramos’ disabling psychiatric symptomology allegations. Subsequently, there is a “summary” of the psychological evidence of record and the medical opinion evidence, again absent any analysis or link to the ALJ’s rejection of Ms. Ramos’ disabling psychiatric symptomology allegations (AR 23-24). As such, beyond the wholesale, generalized, non-specific references to “moderate” MSE findings in “Exhibits 2F-9F,” totaling 291 pages; “cherry picked” references to “daily activities” “out of context,” with the record as a whole and Ms. Ramos’ actual hearing testimony, in a one-time CE report at Exhibit “8F/3” (AR 686), which found “marked” limitations that the ALJ rejected (AR 26); and absent any specific citation to “Exhibit 5E,” consisting of 12 pages, which is a “Function report,” completed in 2023, two years prior to Ms. Ramos’ actual hearing testimony, the ALJ harmfully errs by failing to perform any analysis of specific, probative evidence of record and link it to Ms. Ramos’ actual probative hearing testimony to clearly and convincingly support the rejection of her disabling symptomology allegations. See, e.g., Yiengyouav v. King, 1:23-cv-01601-HBK, 2025 WL 572665 at *4-5 (E.D. Cal. Feb. 21, 2025) (emphasis added) (MSJ at 4)

However, ALJ’s are not required to provide a “line-by-line exegesis” or draft dissertations See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).” Requiring an ALJ to link each fact in the testimony to the evidence that purportedly undermines it could certainly be characterized as a line-by-line exegesis.

Plaintiff further takes issue with the fact that the ALJ provided “wholesale, generalized, non-specific references to ‘moderate’ MSE findings in “Exhibits 2F-9F,” totaling 291 pages,” in the ALJ’s factual summary MSJ at 4. However, the ALJ did provide some relevant pin citations to normal mental status examinations as demonstrated at page 23 of the AR where the ALJ observed:

> The record shows that the claimant underwent behavioral therapy with Michael E. Mullan, Ph.D. from July 2021 through October 2024 reporting PTSD symptoms after being robbed as a cashier in July 2019 stating that she was held up at gunpoint and then stating she was held up at knifepoint. (Exhibit 2F/1-3 and 13-15) She also reported intermittent conflicts with her sister and her friend as she went back and forth living with both being noted as providing babysitting for her friend’s five children including a baby and helping care for her sister’s father-in-law with

> dementia as well as take her niece to appointments. (Exhibit 2F/93-95, 4F/14-15 and 7F/1-2) during this time she consistently presented with normal mental status evaluations being focused on applying for disability benefits. (Exhibit 2F, 4F, 7F and 9F).
>
> Specifically, in 2021, the claimant was living with her sister reporting intrusive thoughts, flashbacks and bad dreams about the robbery while also reporting being able to go Christmas shopping with her friend. Dr. Mullan noted that her symptoms were moderate presenting with normal mental status evaluations while she focused on applying for short-term disability benefits. (Exhibit 2F/1-21). AR 23.

Given this observation, the ALJ did not err in omitting them from the paragraph addressing Plaintiff's symptomology. (See further, Exhibits 4F, 7F, and 9F which are 23 pages, 36 pages, and 23 pages, respectfully). Further, many of the behavioral health notes in Exhibit 4F contain the comment "Patient presented clear oriented speech within normal ranges thought processes linear" or a similar comment at the conclusion of the "History of Present illness" section. See e.g., AR 568, 574, 577.

In addition, normal or moderate findings on mental status examination is just one piece of the clear and convincing evidence the ALJ identified. Lastly, although subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

Next, Defendant responds as follows regarding the ALJ's decision:

> The ALJ detailed that Plaintiff continued treatment with David Davis, FNP-C in May 2025, June 2025 and July 2025 and obtained medication refills with treatment notes showing Plaintiff presenting with no mental health complaints and normal evaluation findings (AR 24, 26 citing 729-774). Thus, contrary to Plaintiff's arguments considering the overall record the ALJ reasonably discounted Plaintiff's symptoms because they were not entirely consistent with the objective medical and treatment record, which supported better functioning than Plaintiff asserted.
> Additionally, the ALJ reasonably discounted Plaintiff's subjective symptoms on the basis that her conditions did not require emergency intervention and symptoms improved with treatment. 20 C.F.R. § 404.1529(c)(3)(iv). In Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017), the Ninth Circuit explained that

> "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." For example, the ALJ found that the record showed evidence Plaintiff did not have episodes of emotional decompensation requiring emergency care or hospitalization and she was otherwise able to manage her mood disorder with behavioral therapy (AR 24, 26). Moreover, as previously addressed the ALJ found that Plaintiff was also able to effectively manage symptoms with prescribed medications (AR 24-26). Thus, contrary to Plaintiff's claims the ALJ properly detailed evidence of medical treatment successfully relieving symptoms.
>
> The ALJ also noted that Plaintiff's reported ability to engage in daily activities showed that she retained functional abilities inconsistent with her statements about the intensity and persistence of her symptoms. According to the regulations, daily activities are a relevant factor when evaluating a claimant's statements about symptoms. 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p. The Ninth Circuit has stated, "[e]ven if the claimant experiences some difficulty or pain, her daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" Smartt, 53 F.4th at 499, quoting Molina, 674 F.3d at 1113. For example, the ALJ specifically took notice of the claimant's wide and varied range of activities of daily living being not fully consistent with her allegations of total disability. The ALJ detailed that Plaintiff reported in May 2023 in her Function Report that she was able to care for her dog, prepare simple meals, do laundry, wash dishes, clean her room, drive, walk around the block, go to the store and appointments with a companion, pay attention well while at home, follow written instructions and spend time watching television and bird watching (AR 26 citing 348-359). The ALJ also detailed that in December 2024 during her consultative psychological evaluation she reported being independent with her daily activities while being able to prepare meals, drive, shop independently, shower and dress independently, perform typical household chores, and take her dog and her sister's dog out to the creek for a 1520 minute walk (AR 26 citing 686). The ALJ also highlighted that Plaintiff was able to be a caregiver for her friend's five young children including a baby, was able to help care for her sister's father-in-law with dementia and help take her niece to appointments (AR 21, 26, 23 citing 517-519, 581-582, 648-649). Thus, in addition to Plaintiff's objective medical and treatment history being not entirely consistent with her subjective symptom testimony that she was unable to sustain physical activity for extended periods, the ALJ found that her reported ability to engage in daily activities was incompatible with her symptom allegations and showed that Plaintiff retained more functional abilities than alleged. Resp. at 4–6.

To begin, as to Defendant's statement that, "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability," this is not disputed. The question presented here is whether Plaintiff's medical treatment successfully relieved her symptoms, and it does appear that the ALJ referenced improvement with treatment at least twice. First, the ALJ noted that at the psychiatric consultative examination, Plaintiff "stated that she was in outpatient

psychiatric treatment taking mood medications feeling calmer and sleeping better while not thinking the medications were effective." AR 25. Secondly, in summarizing Plaintiff's testimony the ALJ noted Plaintiff's statement that, "She testified that she was taking mood medication with her recent increase in dosage helping her mood." AR 23. Third, although the lack of emergency treatment noted by Defendant is not especially relevant, other examples suggest improvement with treatment which does add to the clear and convincing reasons for rejecting Plaintiff's testimony.

Next, with respect to Plaintiff's daily activities, Defendant draws attention to the ALJs' findings. In particular, the ALJ stated:

> In May 2023, she reported being able to care for her dog, prepare simple meals, do laundry, wash dishes, clean her room, drive, walk around the block, go to the store and appointments with a companion, pay attention well while at home, follow written instructions and spend time watching television and bird watching. (Exhibit 5E) In December 2024, she reported being independent with her daily activities while being able to prepare meals, drive, shop independently, shower and dress self independently, perform typical household chores and take her dog and her sister's dog out to the creek for a 15-20 minute walk spending her day watching television and napping. (Exhibit 8F/3) AR 26.

The first 5 items identified here indicate a relatively functional individual.[1] Conversely, TV watching, bird watching, walking around the block, "paying attention well at home," add little persuasiveness to the ALJ's analysis. However, beyond these observations which carry limited persuasiveness, the ALJ did, as noted above, describe relatively intact daily activities which do not seem consistent with a claim of debilitating psychiatric symptoms. See Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in

[1] It is questionable to treat attending appointments as evidence of functionality because not going to appointments could be viewed as treatment non-compliance, which also undermines symptom testimony. See Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (noting that subjective testimony can be "undermined by an unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment." (quotations omitted).

"gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

Finally, a basis for harmful error is not created simply because the ALJ recited that, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Especially here where the ALJ did incorporate much of Plaintiff's symptomology into the RFC, such as simple tasks and minimal co-worker contact. Additionally, Plaintiff fails to adequately explain in what respects the RFC is deficient, nor does Plaintiff offer any examples of what additional or different limitations she would like to see reflected in the RFC.

The Ninth Circuit has at times called attention to that type of omission. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) ("Valentine does not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way.") (emphasis added).

In sum, the ALJ articulated clear and convincing reasons, supported by substantial evidence, for (partially) rejecting Plaintiff's symptomology testimony, namely: largely normal mental status examinations, improvement with treatment, and daily activities.

### B. Claim II (Dr. Gunnarsson's Opinion)

#### 1. Medical Opinions: Applicable Law

For applications filed on or after March 27, 2017, new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, when evaluating

any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. Id. “Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.” Woods v. Kijakazi, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to “supportability,” the new regulations provide that “[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.” 20 C.F.R. § 416.920c(c)(1). Regarding “consistency,” the regulations provide that “[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.” 20 C.F.R. § 416.920c(c)(2).

To provide substantial evidence of supportability or consistency finding, an ALJ need only provide "more than a mere scintilla but less than a preponderance" of the evidence. *Tackett*, 180 F.3d at 1098. Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 416.920c(c)(1)). Consistency "means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 416.920c(c)(2)).

In addition, neither supportability nor consistency is controlling; they are considered in relation to each other and to any other factors an ALJ finds relevant. 20 C.F.R. § 404.1520c(b)(2).

While a medical source's relationship with the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 32 F.4th at 791. Importantly, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency

must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings. Id.at 792.

In the end, supportability merely asks whether the results of a specific medical provider's examination support that medical provider's opinion, whereas consistency is evidence from other medical sources. See, Thomas M. v SSA Comm'r, 2026 US Dist. Lexis 216811.

## 2. Analysis

Although Plaintiff labels the second claim as, "The MRFC is not supported by substantial evidence of record," Plaintiff's argument almost entirely concerns the opinion of consultative psychological examiner, Dr. Gunnarsson.

The ALJ summarized Dr. Gunnarsson's opinion as follows:

> In December 2024, the claimant underwent a psychological consultative evaluation with Dia Gunnarsson, Psy.D. Dr. Gunnarsson noted that only two of the claimant's treatment records from August 2024 and September 2024 were reviewed. The claimant reported anxiety, depression and flashbacks being unable to get out of bed at times. She reported manic episodes of volunteering for many things and then backing out with sleeplessness and increased energy being argumentative with these periods lasting for weeks or even a month. She stated that then she would crash and burn having no energy and sleeping excessively. She reported having episodes of shaking, sweating and an upset stomach being scared to go to a store alone as she had a history of being robbed. She reported depression and anxiety since childhood with anxiety and PTSD since being robbed feeling like her symptoms were getting worse. She stated that she had a dog and two kittens having attended a year and a half of college with no history of a learning disorder or need for special education. She reported a history of two to three hospitalizations because of mood issues with last one 20 years prior. She stated that she was in outpatient psychiatric treatment taking mood medications feeling calmer and sleeping better while not thinking the medications were effective. She stated that she had never sought services with the Department of Vocational Rehabilitation. She admitted to using methamphetamine and alcohol between the ages 18 and 21 spending nine months in drug recovery program. She reported being independent with her daily activities while being able to prepare meals, drive, shop independently, shower and dress self independently, perform typical household chores and take her dog and her sister's dog out to the creek for a 15–20-minute walk spending her day watching television and napping. She did report being unable to use transportation, make basic change, shop in a store with many people and get of bed if her mood was low. She presented with a normal

> appearance, eye contact, attitude, speech, insight, affect, thought process, thought content, orientation, attention, recent and remote memory, concentration and judgment. While she had a nervous mood, she was cooperative and engaged during the interview being able to establish rapport with the examiner. She has a mild to moderate memory deficit as she was able to recall three out of three items immediately and one out of three items after five minutes not appearing distractible. She was able to recite six digits forward and three digits in reverse being able to remain focused during the exam. She was able to spell word "world" backwards and compete serial sevens with numerous errors showing deficits with her fund of knowledge. Dr. Gunnarsson diagnosed her with a bipolar I disorder and PTSD. Dr. Gunnarsson assessed that she did not have an impairment in her ability to understand, carry out, apply, and remember, simple (one-two step) repetitive, complex and detailed written and oral instructions with only a mild impairment in her ability to sustain concentration, attention consistency, and persistence in workrelated activity at a reasonable pace. Dr. Gunnarsson stated the claimant had a moderate to marked impairment in her ability to maintain effective social interaction on a consistent and independent basis with others including supervisors, co-workers, and the public based on her subjective complaints as well as in her ability to adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek and responding and adapting appropriately to changes in a work setting based on her subjective complaints. (Exhibit 8F) AR 25 (emphasis added)

The ALJ then considered the opinion:

> The undersigned is partially persuaded by the opinion of Dr. Gunnarsson and the prior administrative psychological finding as they are somewhat consistent with each other in determining that the claimant had moderate limitations. However, Dr. Gunnarsson's opinion that the claimant had a moderate to marked impairment in her ability to maintain effective social interaction on a consistent and independent basis with others including supervisors, co-workers, and the public based as well as in her ability to adapt to the usual stresses and pressures common to a competitive work environment including completing a normal workday or workweek and responding and adapting appropriately to changes in a work setting is not persuasive as it is not supported by the record with Dr. Gunnarsson basing these limitations on the claimant's subjective complaints. Specifically, these limitations are not supported by the record showing that the claimant was able to adapt and manage the stress of caring for five young children as well as persistent in applying and being awarded short-term disability and general relief. Additionally, the undersigned is not persuaded by the prior administrative psychological findings of mild limitations in understanding, remembering and applying information as well as in concentrating, persisting and maintaining pace as this finding is not consistent with the claimant's self-reports and not supported by the record showing the claimant's instability in her living arrangements. (Exhibit 7A, 8A and 8F) AR 26-27. (emphasis added).

Plaintiff cites much of the abnormal history and symptomology Plaintiff reported to Dr.

Gunnarsson, which is largely covered in the first claim of error discussed above. For example, Plaintiff claims that she has a traumatic history and significantly abnormal psychological symptoms, chiefly fear of being around others, especially larger crowds, as she has a mistrust of other people stemming from an incident where she was robbed at gun point.

Importantly though, Dr. Gunnarsson's opinion is unsupported by Dr. Gunnarsson's own examination findings and further, is inconsistent with the broader record.

In terms of supportability, the ALJ correctly concluded that the opinion was based on subjective complaints. Here, the objective findings were mostly normal as set forth in the ALJ's summary that follows:

> She presented with a normal appearance, eye contact, attitude, speech, insight, affect, thought process, thought content, orientation, attention, recent and remote memory, concentration and judgment. While she had a nervous mood, she was cooperative and engaged during the interview being able to establish rapport with the examiner. She has a mild to moderate memory deficit as she was able to recall three out of three items immediately and one out of three items after five minutes not appearing distractible. She was able to recite six digits forward and three digits in reverse being able to remain focused during the exam. She was able to spell word "world" backwards and compete serial sevens with numerous errors showing deficits with her fund of knowledge. AR 25 (citing Exhibit 8F, AR 684-692 (emphasis added).

In support of this summary, of the 19 items on the mental status exam (e.g., appearance, motor activity, attitude), Dr. Gunnarsson noted normal or benign findings on 15 of the 19, the only exceptions being: 1-nervous mood, 2-mild to moderate memory impairment, 3-moderate calculation impairment, and 4- fund of knowledge was not intact for current events. AR 687–88. Hence, these findings do not support moderate to marked limitations in multiple areas of mental functioning.

In terms of consistency,[2] the ALJ appropriately found the alleged moderate to marked

---

[2] Although the ALJ used the word "supported," the ALJ was comparing the alleged limitations in Dr. Gunnarsson's opinion to a behavioral health note from another provider (Dr. Mullan), so the regulations would technically label this a "consistency" finding. Thus, the substance of the

limitations in adaptation and stress management were in conflict with the fact that she was able to take care of her friend's children per her behavior health visit notes. AR 517. And, although the ALJ did not provide a pin citation in the paragraph quoted above, the ALJ did provide it earlier in the factual summary. See AR 23 (citing Ex. 2F/93-95).

Finally, as to the alleged moderate to marked limitations in social interaction, the RFC does provide for a nonpublic work environment with only occasional interaction with coworkers and supervisors. And there is simply a lack of support in the record for the RFC to include more restrictive limitations relating to social interaction.

Lastly, because Plaintiff fails to adequately explain the alleged deficiency in the RFC (e.g., no co-worker interaction), her argument falls short. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) ("Valentine does not detail what other physical limitations follow from the evidence of his knee and should injuries, besides the limitations already listed in the RFC. We reject any invitation to find that the ALJ failed to account for Valentine's injuries in some unspecified way.") (emphasis added).

## VII. Findings and Recommendation

For the reasons stated above, substantial evidence and applicable law do support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, be **DENIED**
2. Defendant's Cross Motion, ECF No. 17, be **GRANTED**
3. That the Commissioner of Social Security's Decision be **AFFIRMED**.
4. That the Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

---

analysis is present.

**VIII. Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson, 772 F.3d 834, 838-39 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **October 15, 2026** **/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE